IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **OCLC ONLINE COMPUTER LIBRARY CENTER, INC.,** | Case No. 2:22-CV-2470 |
| Plaintiff, | **Judge Graham** |
| v. | **Magistrate Judge Jolson** |
| **CLARIVATE, PLC., ET AL.,** | |
| Defendants. | |

## TEMPORARY RESTRAINING ORDER

Plaintiff OCLC Online Computer Library Center, Inc ("OCLC") brought suit against Defendants Clarivate, Plc; Clarivate Analytics (US) LLC; ProQuest, LLC; and Ex Libris (USA), Inc. alleging that Defendants are tortiously interfering and conspiring to tortiously interfere with its contractual relationships and tortiously interfering and conspiring to tortiously interfere with its prospective business relationships. This matter is before the Court on Plaintiff's motion for temporary restraining order and preliminary injunction, Doc. 4.

### I. Background

Plaintiff is an Ohio non-profit membership, computer library service and research organization that provides shared technology services, original research, and community programs to its subscribers and the library community. Rozek Decl. at ¶ 6. Its services include management services, metadata services, discovery and reference services, and resource sharing services. *Id.* at ¶ 9.

One of Plaintiff's most successful offering is WorldCat. *Id.* at ¶ 18. WorldCat is "the world's most comprehensive database of information about library collections and the authoritative source of library bibliographic records." *Id.* at ¶ 10. It is comprised of more than 522 million

bibliographic records containing information about written work such as title, author, and number of pages. *Id.* at ¶¶ 11, 15. WorldCat obtains bibliographic information from OCLC member libraries, publishers, vendors, and national libraries. *Id.* at ¶ 15. WorldCat becomes more useful as more libraries use and contribute to it. *Id.* at ¶ 10.

The true value of WorldCat lies in Plaintiff's modification of the bibliographic information it receives. Plaintiff modifies 93% of records before they become WorldCat records. *Id.* at ¶ 17. This modification consists of adding metadata to enhance the discovery of, exploration of, and access to the records. *Id.* at ¶ 16. The added metadata includes Dewey Decimal Classification numbers and Faceted Application of Subject Terminology headings. *Id.* Each record Plaintiff modifies is assigned a unique OCN number, which "serves as an authoritative index for identifying and referring to specific titles or works." *Id.*

Defendants are a group of Plaintiff's business competitors that are quickly obtaining a monopoly in the library services industry. Originally, Defendants Clarivate, PLC, ProQuest, LLC, and Ex Libris (USA), Inc. were competing companies. In 2015, ProQuest acquired Ex Libris Group. *Id.* at ¶ 36. At the time Ex Libris Group had approximately 53% of the market share among Association Research Library ("ARL") institutions.[1] *Id.* at ¶ 38. For comparison, Plaintiff had only a 2.4% share. *Id.* In 2019, ProQuest acquired Innovative, its largest competitor. *Id.* at ¶ 40. After this acquisition, ProQuest owned over 84% of the market among ARL institutions, 72% among all academic institutions, and 54% among public libraries. *Id.* at ¶ 42. At that time Plaintiff held a 4% market share among ARL institutions, 10% among academic institutions, and 10% among public libraries. *Id.* In 2021, Clarivate, PLC acquired ProQuest and its subsidiaries. *Id.* at ¶

---

[1] The Association of Research Libraries is a membership organization of libraries and archives in major public and private universities, federal government agencies, and large public institutions in Canada and the United States. https://www.arl.org/.

44. Through this, Defendants obtained a program called SkyRiver, a less successful competitor to WorldCat. *Id.* at ¶ 48. SkyRiver contains over 70 million records while WorldCat contains over 500 million records. *Id.*

Plaintiff believes that Defendants are attempting to again enlarge their collective share of the library services industry, this time by taking WorldCat records and metadata and offering them for free through a program called MetaDoor. Defendants have been developing and promoting MetaDoor since at least March 2022. *Id.* at ¶ 49. MetaDoor is intended to be an open-source, free program that permits libraries to efficiently share their catalog with other libraries and the general public. *See* Doc. 28 at 1-2. MetaDoor is being positioned to compete directly with WorldCat. Rozek Decl. at ¶ 49. Unlike WorldCat, which collects records in a central database, MetaDoor is "simply a search tool that will facilitate searching by participating institutions across other such institutions' own existing catalog records." Doc. 28 at 2. Defendants are actively encouraging WorldCat subscribers to provide them with their entire catalogs, including WorldCat records and metadata. Rozek Decl. at ¶ 58.

WorldCat subscribers' use of WorldCat records and metadata is, as pertinent here, governed by two documents – the Framework Agreement and the WorldCat Rights and Responsibilities for the OCLC Cooperative policy (the "Policy"). *Id.* at ¶ 25. The Framework Agreement states that "OCLC and/or its licensors or suppliers are the exclusive owners of and retain all right, title, and interest (including all copyrights, trademarks, patents, and any other proprietary rights) to the Products, Services, WorldCat®, and all other materials produced or provided by OCLC." Doc. 1-1 at 5.

The Policy authorizes WorldCat subscribers to extract WorldCat data for the purpose of enriching their own records and to transfer or make available that data to individual scholars,

3

library consortia, and educational, cultural, or scholarly institutions. Doc. 5-2 at 4. The Policy prohibits its subscribers from "engaging in mass downloading from WorldCat without OCLC's prior written consent," "engaging in mass distribution of data directly from WorldCat to non-members without OCLC's prior consent," or "engaging in other activities that diminish the value of WorldCat to the OCLC cooperative." Doc. 5-2 at 5.

Plaintiff filed suit against Defendants on June 13, 2022. Plaintiff alleges that Defendants' attempts to obtain WorldCat records and metadata from WorldCat subscribers and distribute those records and metadata for free on MetaDoor constitutes tortious interference and conspiracy to tortiously interfere with its contractual relationships and tortious interference and conspiracy to tortiously interfere with prospective business relationships.

The Court conducted a telephone conference with the parties on June 22, 2022 in accordance with Local Civil Rule 65.1(a). The Court instructed Plaintiff to submit a proposed temporary restraining order and Plaintiff did so.

The Court conducted an additional telephone conference on June 24, 2022. The Court instructed Plaintiff to submit a revised proposed temporary restraining order and Defendants to submit a response to Plaintiff's motion for temporary restraining order by close of business that day. Both parties did as instructed.

**II.     Standard of Review**

Temporary restraining orders are authorized under Rule 65(b) of the Federal Rules of Civil Procedure.  They are extraordinary remedies governed by the following considerations: (1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent an injunction, (3) whether issuance of the injunction would cause substantial harm to others, and (4) whether the public interest would be served by granting the

4

requested injunction. *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008); *see also Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

The party seeking preliminary relief "bears the burden of justifying such relief, including showing irreparable harm and likelihood of success." *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000); *accord Jolivette v. Husted*, 694 F.3d 760, 765 (6th Cir. 2012).

### III. Discussion

#### A. Likelihood of Success on the Merits

The Court begins with Plaintiff's first cause of action – tortious interference with contractual relationships – to determine if Plaintiff has a strong likelihood of success on the merits. Under Ohio law, the elements of a tortious interference with contract claim are: "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages." *NCR Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807, 817 (6th Cir. 2008) (quoting *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853, 858 (Ohio 1999)).

Plaintiff contends that Defendants are intentionally inducing WorldCat customers to breach the Policy by requesting that they place their catalogs containing WorldCat records and metadata on MetaDoor.[2]

---

[2] Plaintiff has satisfied its burden as to the other elements. As to the first element, Plaintiff has shown that the Policy, which Plaintiff is alleging may be breached, is incorporated into the OCLC Framework Agreement entered into by WorldCat subscribers. Doc. 1-1 at 11; Rozek Decl. ¶ 25. As to the second element, Defendants received three letters, dated April 10, 2020, May 19, 2022, and May 27, 2022, notifying them that subscribers are contractually prohibited from sharing with them WorldCat records and metadata. Docs. 5-12; 5-13; 5-14; Rozek Decl. ¶ 67-69. As to the fourth element, no justification for Defendants' interference has been asserted at this early stage.

The Policy expressly permits subscribers to extract WorldCat data to enrich their own catalogs. Doc. 5-2 at 4. The subscribers are further permitted to:

> [t]ransfer or make available such data to individual scholars . . . to library consortia . . . , or other libraries and educational, cultural or scholarly institutions (e.g., museums, archives, historical societies, research institutes), whether these institutions are members or non-members of OCLC, for these organizations' institutional or collaborative re-use.

Doc. 5-2 at 4. This authorization is not without limit. The Policy requires subscribers to "not engage in other activities that diminish the value of WorldCat to the OCLC cooperative." Doc. 5-2 at 5.

Defendants argue that WorldCat subscribers may contribute their catalogs to MetaDoor because "MetaDoor simply facilitates transfers of records between those covered institutions, and such transfers are unquestionably permitted under OCLC's agreements." Doc. 28 at 2.

This argument is unpersuasive. The Policy permits catalogs containing WorldCat records and metadata to be shared only with specific entity types. Sharing the records and metadata on MetaDoor transcends that permission; it is the sharing of those records and metadata with the general public and, more importantly, Plaintiff's business competitors. Moreover, the Policy prohibits activities that diminish the value of Worldcat. Providing WorldCat records and metadata, the things that make WorldCat valuable, through a competitor's program that makes the records and metadata freely available to the general public diminishes the value of WorldCat.

## B. Irreparable Injury

The Court finds that Plaintiff has met its burden of showing irreparable injury absent an injunction. WorldCat is an important part of Plaintiff's business. It is responsible for an average

---

As to the fifth element, Plaintiff has shown that Defendants' interference would result in Plaintiff's records and metadata being offered to the general public for free, an obvious harm to Plaintiff.

of 40% of OCLC's revenue over the past 5 years. Rozek Decl. at ¶ 18. It also is crucial to Plaintiff's other products and services. *Id.* at ¶ 22, 77. Due to its function in Plaintiff's other services, World-Cat is indirectly responsible for 83% of OCLC's revenue. *Id.* at ¶ 24. If WorldCat records and metadata are made available to Defendants to be utilized in MetaDoor, those records and metadata will be available to the general public for free. As a result, WorldCat records and metadata would no longer and likely never again hold the value they do today.

The Court acknowledges that MetaDoor is in the development phase and is not likely to be released until February 2023. Even so, Defendants' conduct puts WorldCat at risk of immediate harm. Defendants are currently advertising and having libraries consent to participate in Meta-Door. In doing so, Defendants are damaging Plaintiff's goodwill with its subscribers, who are paying for identical access through WorldCat what they hope to get for free with MetaDoor, while also inducing those same subscribers to breach the Policy. This is not a future risk; this is a current harm.

### C. Public Interest and Harm to Others

Plaintiff has shown a strong likelihood of success on the merits. It has produced credible evidence to establish all of the elements of tortious interference with a contractual relationship. It has shown that it would suffer immediate irreparable injury absent an injunction. Here, Defendants are actively seeking to interfere with Plaintiffs' valuable contract rights and a temporary restraining order is necessary to preserve the status quo. The Court finds that the granting of a temporary restraining order will not cause substantial harm to the Defendants. It is in the public interest to prevent a party from interfering with another citizen's contractual rights and that is particularly true where the contractual rights relate to technology which provides a valuable service to others. The Court finds that the granting of a temporary restraining order will be in the public interest.

Accordingly, to maintain the status quo and permit the parties an opportunity to more fully articulate their arguments, the Court **GRANTS** Plaintiff's motion for a temporary restraining order and **ORDERS** that a temporary restraining order be entered immediately enjoining Defendants from:

1. contacting or communicating with OCLC WorldCat customers about:

    a. downloading, uploading, linking to, transferring and/or otherwise sharing WorldCat records or metadata for MetaDoor, regardless of the OCLC WorldCat customer's integrated library service or library service platform;

    b. partnering or assisting Defendants with developing MetaDoor to the extent these arrangements induce WorldCat customers to download, upload, link to, transfer, and/or otherwise share records or metadata for MetaDoor, as set forth above;

2. requesting from OCLC WorldCat customers any OCLC WorldCat records and metadata or records and metadata derived from the same for the use of MetaDoor; and

3. retaining, using, or making available to the public any OCLC WorldCat records and metadata or records and metadata derived from the use of MetaDoor which was obtained from OCLC WorldCat customers.

Attached as a sealed addendum to this Order is a list of OCLC WorldCat customers. The list of OCLC WorldCat customers is to be viewed only by the lead attorneys involved in this case for the purpose of determining compliance with this Order. It may not be shared with Defendants'

officers or employees for any reason. For purposes of this Order, OCLC WorldCat records and metadata are those that contain a unique OCN number.

Pursuant to Local Rule 67.1, Plaintiff shall post bond in the amount of $50,000.

### IV.  Conclusion

For the above reasons, the Court **GRANTS** Plaintiff's request for a temporary restraining order. Included with Plaintiff's request for a temporary restraining order is a request for preliminary injunction. The Court hereby sets this matter for an evidentiary hearing on Plaintiff's request for preliminary injunction on July 11, 2022 at 10:00 a.m. in courtroom 148. Plaintiff's Motion for expediated discovery, Doc. 6, is **GRANTED**. The parties are directed to contact the assigned magistrate judge to set the parameters of expedited discovery.

**IT IS SO ORDERED**.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: June 27, 2022